UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

AMY JOHNSON,

       Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

Case No. 1:23-cv-01231

Hon.  Paul L. Maloney
U.S. District Judge

# REPORT AND RECOMMENDATION

This Report and Recommendation addresses Plaintiff's appeal of Administrative Law Judge (ALJ) Joerin O'Leary's decision denying Plaintiff's request for Disability Insurance Benefits (DIB). This appeal is brought pursuant to 42 U.S.C. § 405(g).

The record before the Court demonstrates that Plaintiff suffers from a number of severe medically determinable impairments, including coronary artery disease, strokes, degenerative disc disease, chronic obstructive pulmonary disease (COPD), anxiety disorder, depressive disorder, and cocaine and cannabis use disorder. Plaintiff states that due to experiencing two strokes and neck surgery, she can no longer work because of intense pain in her neck and upper extremities, and weakness in her right upper and lower extremities. Plaintiff says that she also has difficulty concentrating and completing tasks. Plaintiff asserts that the ALJ's formulation of Plaintiff's Residual Functional Capacity (RFC) prior to Step Four is not supported by

1

substantial evidence and erroneously applies the law. Plaintiff's primary argument is that the ALJ erred in formulating Plaintiff's RFC by determining that she can perform sedentary work with some limitations. More specifically, Plaintiff says that the ALJ's conclusions improperly relied upon Plaintiff's substance abuse issues as causes for her strokes and used that as a basis to reject her subjective statements, improperly relied on objective medical evidence to conclude that Plaintiff's assertions of pain were not supported in the medical record, and failed to evaluate the residual cognitive and physical effects of her strokes in considering manipulative, postural, and mental requirements of sedentary work. The Commissioner asserts that the ALJ properly considered the medical record and credited Plaintiff's statements by providing work restrictions in the RFC. The Commissioner argues that the Court should reject Plaintiff's argument to reweigh the evidence.

For the reasons stated below, the undersigned respectfully recommends that the Court affirm the ALJ's decision.

**I.   Procedural History**

**A.   Key Dates**

The ALJ's decision notes that Plaintiff applied for DIB on January 11, 2021, alleging an onset date of July 12, 2020. (ECF No. 6-2, PageID.33.) Plaintiff's claim was initially denied by the Social Security Administration (SSA) on August 10, 2021. (*Id.*) The claim was denied on reconsideration on April 25, 2022. (*Id.*) Plaintiff then requested a hearing before an ALJ. ALJ O'Leary conducted a hearing on Plaintiff's claim on October 21, 2022, and issued her decision on November 16, 2022.

2

(*Id.*, PageID.33, 49.)  Plaintiff timely filed this lawsuit on November 24, 2023.  (ECF No. 1.)

### B. Summary of ALJ's Decision

The ALJ's decision correctly outlines the five-step sequential process for determining whether an individual is disabled.  (ECF No. 6-2, PageID.34-35.)  Before stating her findings at each step, the ALJ concluded that Plaintiff's Date Last Insured (DLI) was December 31, 2025.  (*Id.*, PageID.35.)

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity (SGA) since July 12, 2020.  (*Id.*)

At Step Two, the ALJ found that the Plaintiff had the following severe impairments: coronary artery disease, carotid artery stenosis, cerebrovascular accident, degenerative disc disease of the cervical spine, COPD, generalized anxiety disorder, unspecified depressive disorder, and cocaine and cannabis use disorder.  (*Id.*, PageID.36.)

At Step Three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one or the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*)  The ALJ specifically commented on the impairments listed in 1.15 (spine), 3.02 (respiratory), 4.40 (heart), 11.04 (cerebrovascular).  (*Id.*, PageID.36-37.)

Before going on to Step Four, the ALJ found that the Plaintiff had the following RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can lift and carry ten pounds. The claimant can stand and walk

for six hours in an eight-hour workday. The claimant can occasionally balance, stoop, kneel, crouch, and crawl; occasionally climb ramps and stairs; and never climb ladders, ropes, and scaffolds. The claimant can tolerate no more than occasional, concentrated exposure to atmospheric conditions, defined as exposure to fumes, noxious odors, dusts, mists, gases, and poor ventilation. The claimant can tolerate no more than occasional exposure to extreme cold or vibration. The claimant should avoid exposure to dangerous moving mechanical parts and unprotected heights. The claimant must have access to restroom facilities, e.g., no outdoor work. The claimant can understand, remember, and carry out simple instructions not requiring a specific production rate such as would be required for assembly line work. The claimant can make simple work-related decisions. The claimant can tolerate occasional changes in a routine work setting. The claimant can occasionally interact with co-workers, supervisors, and the general public.

(*Id.*, PageID.40.)

The ALJ devoted 7 pages to discussing Plaintiff's RFC. This discussion included the following:

- a summary of the regulations regarding how the ALJ will address Plaintiff's symptoms (*id.*, PageID.40),

- a summary of Plaintiff's statements (*id.*, PageID.40-41),

- a summary of the medical records relating to degenerative disc disease, COPD, strokes, coronary artery disease, and anxiety and depression (*id.*, PageID.41-44),

- a summary of opinions by (i) consulting doctors Dale Blum, M.D., and Edward Brophy, D.O., determining that Plaintiff can perform sedentary work with some limitations; (ii) psychological consulting doctors Barbara Jones-Smith, Ph.D., and Edward Czarnecki, Ph.D., finding some moderate mental limitations; (iii) Plaintiff's boyfriend's Function

> Report which support Plaintiff's allegations; and (iv) Plaintiff's treating physician Dr. Matthew Roberge, M.D., finding that Plaintiff had cognitive limitations due to her strokes and could not perform physical labor or a desk job (*id.*, PageID.44-46).

- an explanation of how the ALJ arrived at his decision on Plaintiff's RFC (*id.*, PageID.40-46).

At Step Four, the ALJ concluded that, through the DLI, the Plaintiff was unable to perform Past Relevant Work (PRW). (Id., PageID.46-47.)

At Step Five, the ALJ considered the Plaintiff's age, education, work experience and RFC and concluded that Plaintiff is not disabled under the Social Security Act because jobs that she can perform exist in significant numbers in the national economy. (*Id.*, PageID.47-48).

## II. Standard of Review

Review of an ALJ's decision is limited to two issues: (1) "whether the ALJ applied the correct legal standards," and (2) "whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); 42 U.S.C. § 405(g). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial

evidence. 42 U.S.C. § 405(g).

Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and whatever evidence in the record fairly detracts from its weight. *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984) (citations omitted). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords the administrative decision maker considerable latitude and acknowledges that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).

### III. Analysis

Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's subjective complaints of pain and the residual effects of her strokes and neck surgery by relying on the objective medical evidence to conclude that Plaintiff could perform sedentary work with restrictions. An ALJ considers objective medical evidence as:

> a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work. We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the

6

> intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.

20 CFR § 404.1529(c)(2).

The Court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed[.]" *Kuhn v. Comm'r of Soc. Sec.*, 124 F. App'x 943, 945 (6th Cir. 2005). "It is for the administrative law judge, not the reviewing court, to judge the consistency of a claimant's statements." *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 (6th Cir. 2020).

An ALJ evaluates a claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms of an alleged disability in accordance with SSR 16-3p. "While SSR 16-3p eliminated the use of the term 'credibility,' the regulatory analysis remains the same." *Karmol v. Comm'r of Soc. Sec.*, No. 1:17-cv-977, 2019 WL 1349485, at *3 (W.D. Mich. Mar. 26, 2019). An ALJ should consider the factors set forth in 20 C.F.R. § 404.1529(c)(3)[1] but "is not required

---

[1] The SSA – and any ALJ who subsequently reviews the case – considers the following factors with respect to a claimant's symptoms:
  (i)   [The claimant's] daily activities;
  (ii)  The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
  (iii) Precipitating and aggravating factors;
  (iv)  The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [the claimant's] pain or other symptoms;
  (v)   Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [the claimant's] pain or other symptoms;
  (vi)  Any measures [the claimant] use[s] or ha[s] used to relieve [the claimant's]

7

to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Comm'r of Soc. Sec.*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases). SSR 16-3p explains that an ALJ's decision must "contain specific reasons for the weight given to an individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so that the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." 2017 WL 5180304, at *10.

As a starting point, Plaintiff testified at her hearing that she stopped working after her strokes because she was experiencing neck, right arm, right leg, and left foot problems. (ECF No. 6-2, PageID.64 (hearing transcript).) This included difficulty opening jars and dropping things, "like plantar fasciitis" in her left foot, difficulty writing and using zippers, and with comprehending – described as problems with telling stories. (*Id.*, PageID.64-67.) Since her neck surgery, she has been having problems looking up and down and lifting her head onto her pillow. (*Id.*, PageID.68.) Her doctor prescribed Norco and gabapentin for pain. (*Id.*, PageID.68-69) She takes medications for blood thinning, blood pressure, and for mental health. (*Id.*, PageID.69-70.) She said that that Norco made her tired. (*Id.*, PageID.70.) Plaintiff testified that she could sit for five to ten minutes before having to change her position by moving around in her seat, until she needed to stand after about

---

|       | pain or other symptoms (e.g., lying flat on [their] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and |
|-------|---|
| (vii) | Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). |

fifteen minutes.  (*Id.,* PageID.71.)   She could stand thirty minutes before she would need to sit back down and she could walk one half block to a block.[2]   (*Id.,* PageID.71-72.)

ALJ O'Leary correctly stated the 2-step process for evaluating Plaintiff's symptoms, but determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects . . . are not entirely consistent with the medical evidence and other evidence in the record . . ." .   (ECF No. 6-2, PageID.40-41.)

The ALJ discussed Plaintiff's degenerative disc disease of the cervical spine, noting that Plaintiff used over-the-counter pain medication, muscle relaxants, and epidural injections for neck and left extremity pain.  (*Id.,* PageID.41.)   After conservative treatment did not provide Plaintiff with relief, she had neck surgery on April 1, 2022.  (*Id.*)   The ALJ then noted that Plaintiff continued with "flexion, extension, and rotation of the neck" issues, but determined that the record did not support a preclusion of work at the sedentary level.  (*Id.*)   In making this determination, the ALJ considered the May 2022 cervical spine radiographs showing only mild findings.  (*Id.*)   In consideration of the findings and Plaintiff's statements of pain aggravated by "grasping, lifting, reaching, and rotary movement of the neck", the ALJ limited Plaintiff to lifting and carrying ten pounds, walking for six hours of an eight hour workday, and being able to "occasionally balance, stoop, kneel, crouch,

---

[2]   The ALJ noted that the Plaintiff "acknowledged that she retains the ability to complete a variety of daily living activities including preparing meals for herself, household cleaning and other chores, shopping for food and other necessities, taking prescribed medications as directed, maintaining her personal hygiene and other care needs, watching television programs, and gardening."   (ECF No. 6-2, PageID.36-37.)

and crawl" and "occasionally climb ramps, and stairs; and never climb ladders, ropes and scaffolds." (*Id.*, PageID.42.)

The ALJ then discussed Plaintiff's COPD, coronary artery disease, and recurring thrombotic-embolic events associated with her previous substance abuse. As a result, the ALJ placed further limitations in Plaintiff's RFC to address these issues. (*Id.*, PageID.42-43.) While Plaintiff does not take issue with the ALJ conclusions regarding her COPD and coronary artery disease, Plaintiff states that the ALJ should not have used her past substance abuse as a possible cause of her strokes to unfavorably evaluate her claim. (ECF No. 16, PageID.2301.) First, Plaintiff does indicate the ALJ mischaracterized her past substance abuse. Second, the ALJ noted initially that Plaintiff's cocaine and cannabis use disorder was a severe impairment that she considered in determining Plaintiff's disability status. (ECF 6-2, PageID.36.) Finally, Plaintiff's argument that the ALJ only included her past substance abuse to "unfavorably evaluate Plaintiff's claim" is not supported by anything in the record. (ECF No. 16, PageID.2301.) Moreover, contrary to Plaintiff's assertion, the ALJ did consider the residual effects from her strokes. (ECF No. 6-2, PageID.43-44.)

In doing so, the ALJ further evaluated Plaintiff's anxiety disorder and depression, noting that Plaintiff manages her symptoms with medication. (*Id.*) The ALJ noted that Plaintiff had "reported a history of anxiety and depression and difficulty with comprehension, processing information, and speech deficits since her most recent stroke in June 2021." (*Id.*, PageID.43.) The ALJ noted that Plaintiff's

mental status examinations lacked significant findings with "thinking, cognition, demeanor, judgment, impulse control, insight, memory, mood, and affect, speech, stream of thought and thought content were adequate, good/fair, intact or within normal limits." (*Id.*, PageID.43.) Nevertheless, and despite Plaintiff's claim otherwise, the ALJ considered the effects of Plaintiff's strokes in formulating her RFC, explaining as follows:

> Still, I considered the claimant's residual memory problems, difficulties concentrating generally, completing tasks, following both oral and written instructions, handling routine stress and changes in routine due to her anxiety and statements that she has limited interactions with others in assessing her residual functional capacity (Exhibits 4E; 7E; 9F/16 & Hearing Testimony). Accordingly, the residual functional capacity provides the claimant can understand, remember, and carry out simple instructions not requiring a specific production rate such as would be required for assembly line work. The residual functional capacity also provides the claimant can make simple work-related decisions; and can tolerate occasional changes in a routine work setting. In addition, the residual functional capacity provides the claimant can occasionally interact with co-workers, supervisors, and the general public.

(*Id.*)

In determining Plaintiff's RFC, the ALJ was persuaded by the opinions of State Agency medical consultants Dale Blum, M.D., and Edward Brophy, D.O., who determined that Plaintiff could perform sedentary work with some limitations that were addressed in the RFC. (*Id.*, PageID.44-45.) The ALJ considered the evaluations of psychological consultants Barbara Jones-Smith, Ph.D., and Edward Czarnecki, Ph.D., and provided further limitations including occasional interaction with co-workers, supervisors, and the public and work that is not at a specific production rate. (*Id.*, PageID.45.) The ALJ appropriately relied on the opinions of

11

the medical expert consultants in formulating Plaintiff's RFC.

Importantly, Plaintiff has not argued that the ALJ mischaracterized the medical record. Plaintiff essentially asks the Court to reweigh the evidence and to find in her favor. ALJ O'Leary weighed the evidence in the record and determined that Plaintiff's statements regarding intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical records. In the opinion of the undersigned, ALJ O'Leary did not err in determining Plaintiff's RFC and concluding that Plaintiff was not disabled under the Social Security regulations. Reweighing that evidence, as invited by Plaintiff, is not within the province of this Court.

## IV. Conclusion

Accordingly, it is respectfully recommended that the Court affirm the decision of the Commissioner because substantial evidence exists to support the ALJ's decision.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: January 14, 2025                                /s/ *Maarten Vermaat*
                                                                  MAARTEN VERMAAT
                                                                  U.S. MAGISTRATE JUDGE